IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| R. STEPHEN HEINRICHS, | : | |
| | : | Case No. 2:13-CV-00929 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Elizabeth P. Deavers |
| GEORGE DUNN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

**I.      INTRODUCTION**

This matter is before the Court on Defendants George Dunn, Charles House, Bob Garretson, Fred Nielsen, Jeannie Macaluso, Joe Johnson, Bob Campbell, Vic Skirmants, Jim Liberty, Felix Macaluso, Karen Campbell, Mary Skamser, and Gordon Maltby's Motion to Dismiss (Doc. 12).  For the reasons set forth herein, Defendants' Motion is **GRANTED.**

**II.     BACKGROUND**

Plaintiff R. Stephen Heinrichs, a member of 356 Registry, Inc. ("Registry"), is an individual who does not reside in Ohio.  Defendants George Dunn, Charles House, Bob Garretson, Fred Nielsen, Jeannie Macaluso, Joe Johnson, Bob Campbell, Vic Skirmants, Jim Liberty, Felix Macaluso, Karen Campbell, Mary Skamser, and Gordon Maltby (collectively, "Defendants"), are individuals who are former or current elected officers or trustees of the Registry, an Ohio corporation.  None of the Defendants resides in Ohio.

Plaintiff has been an Active member of the Registry for over twenty years. (*Complaint*, Doc. 1, ¶ 12).  At all times relevant to this Complaint, Plaintiff has met the prequisites to be an Active member of the Registry (*Id.*, ¶ 13), including paying his dues (*Id.*, ¶ 12), not resigning his

1

membership (*Id.*, ¶ 14) and not committing infractions of the Registry's rules or acting contrary to the Registry's general objectives or interests (*Id.*, ¶¶ 16-19).  Thus, Plaintiff is entitled to the privileges and benefits of the membership (*Id.*, ¶ 15), namely, access to and the ability to use the Registry's online membership posting forum (*Id.*, ¶ 22).  Further, in the past, the Registry published financial information approximately six months after the end of the tax year for its membership's review.  (*Id.*, ¶ 25).

In mid-2012, Plaintiff noticed that the 2011 financial information had yet to be published. (*Id.*, ¶ 26).  In response, Plaintiff began a discussion thread on the Registry's public forum, noting the missing information and requesting that Defendants make it available.  (*Id.*, ¶ 28). Plaintiff also inquired about the Registry's financial performance for the 2012 fiscal year (*Id.*, ¶ 31) and posted his findings regarding the Registry's 2011 tax returns in a further attempt to pressure Defendants to make the 2011 financial information available.  (*Id.*, ¶ 32).  Plaintiff continued to post on the online forum when Defendants did not provide the requested information.  (*Id.*, ¶¶ 33-34).

In August 2012, Defendants blocked Plaintiffs access to the online discussion forum, preventing him from making new postings and deleting some of his previous postings.  (*Id.,* ¶¶ 35-36).  Around this same time, approximately between August 2012 and October 2012, Defendants communicated by interstate mail or electronic mail, allegedly devising a plan to defraud Plaintiff out of his membership rights and to avoid producing the 2011 financial information.  (*Id.*, ¶ 39).  Specifically, Plaintiff alleges that on August 3, 2012, Defendants exchanged such communications, scheming to invite Plaintiff and other members to an open member meeting, with the secret intention of attacking and ridiculing Plaintiff and terminating Plaintiff's membership status.  (*Id.*, ¶ 40).

2

On August 13, 2012, Defendant George Dunn, through counsel, sent Plaintiff a letter on behalf of the Registry's trustees and officers, inviting him to attend the alleged "schemed" meeting on September 23, 2012, explaining that the meeting's purpose was to allow members to review the Registry's financial information. (*Id.*, ¶ 43-44). Plaintiff did not attend the meeting, but continued requesting that Defendants disclose the financial information. (*Id.*, ¶ 46).

On October 1, 2012, Plaintiff filed a lawsuit against the Registry with the Franklin County Court of Common Pleas in Ohio. (*Id.*, ¶ 50). Two days later, on October 3, 2012, Defendants suspended Plaintiff's membership because of Plaintiff's lawsuit against the Registry. (*Id.*, ¶ 51-55). Up to August 2013, Plaintiff had continuously demanded access to his membership benefits. (*Id.*, ¶¶ 62-63). Plaintiff, a world renowned Porsche historian, author, collector, restoration expert, and international event coordinator, believes access to the online forum is important to his financial success, because he relies on the online community for book sales and marketing. (*Id.*, ¶ 67-77).

On September 19, 2013, Plaintiff filed a Complaint against Defendants, alleging five counts: (1) mail and wire fraud; (2) civil RICO conspiracy; (3) declaratory judgment; (4) breach of fiduciary duties; and (5) intentional interference with a business relationship (Doc. 1). Pursuant to Rules 12(b)(2) and 12(b)(6), Defendants filed a motion for dismissal for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. (Doc. 12).

### III.   MOTIONS

The Defendants seek dismissal of the Plaintiff's Complaint on two alternative grounds: (1) lack of personal jurisdiction over the Defendants; and (2) failure to state a claim upon which relief can be granted. The Court will address each ground independently, herein.

### A. Personal Jurisdiction

Defendants seek dismissal of the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "Because personal jurisdiction is a threshold determination linked to any subsequent order issued by the court," *The Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006), the Court turns to Defendant's Rule 12(b)(2) argument first. For the reasons set forth below, Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is **GRANTED.**

### *1. Standard of Review*

The plaintiff bears the burden of demonstrating personal jurisdiction. *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262–63 (6th Cir. 1996). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (*quoting Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted). The plaintiff can make this prima facie showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" *Neogen,* 282 F.3d at 887 (*quoting Provident Nat'l Bank v. California Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. *Bird*, 289 F.3d at 871. Significantly, the Court is

not to weigh any assertions of the party seeking dismissal which contradict those offered by the plaintiff. *CompuServe,* 89 F.3d at 1262 (*citing Theunissen,* 935 F.2d at 1459). That way, a defendant cannot defeat personal jurisdiction simply by filing an affidavit that denies all jurisdictional facts. *Id.* (*citing Theunissen,* 935 F.2d at 1459).

### 2. *Law and Analysis*

#### a. Introduction

Personal jurisdiction over an out-of-state defendant "arises from certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Air Prods.& Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) (internal quotations omitted). When a federal court's subject matter jurisdiction derives from the existence of a federal question, "personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant [ ] due process.'" *Bird*, 289 F.3d at 871 (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

Here, Plaintiff argues that this Court has personal jurisdiction over Defendants because each Defendant "has purposefully availed himself or herself of the privilege of acting within the State of Ohio, conducting acts or omissions directed to and into the State of Ohio, and voluntarily submitting to the personal jurisdiction of courts within the State of Ohio." (*Complaint*, Doc. 1, ¶ 6). Defendants, however, assert that they lack any real systematic and continuous contacts with Ohio and therefore have not purposefully availed themselves of the privilege of acting in Ohio. (Doc. 19 at 1).

In evaluating Defendant's 12(b)(2) motion, the Court assesses whether Plaintiff has made the requisite *prima facie* statutory and constitutional showing with respect to Defendants.

### b. Ohio's Long-Arm Statute

Ohio's long-arm statute provides nine bases for specific jurisdiction. Ohio Rev. Code § 2307.382(A)(1-9); *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 160 (S.D. Ohio 2012). In relevant part, the statute states, "[a] Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's…(3) [c]ausing tortious injury by an act or omission in this state; (4) [c]ausing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;…" Ohio Rev. Code Ann. § 2307.382(A)(3-4). Although unclear from Plaintiff's Complaint, it appears that Plaintiff relies on the above two portions of the statute in its assertion of personal jurisdiction over Defendants. (*See* Doc. 1, ¶ 6 and Doc. 17 at 5-6).

Section (A)(3) does not confer personal jurisdiction when all of the alleged tortious acts took place outside of Ohio. *Buckeye Check Cashing of Arizona, Inc. v. Lang*, No. 2:06-CV-792, 2007 WL 641824, at *10 (S.D. Ohio Feb. 23, 2007); *see also Dayton Superior Corp*, 288 F.R.D. at 162. In *Buckeye Check Cashing of Arizona*, this Court found that § 2307.382(A)(3) of Ohio's long-arm statute did not apply because the plaintiff did not demonstrate that any of the alleged tortious conduct occurred in Ohio. *Id.* Rather, all such conduct took place in Arizona. *Id.* Similarly, in this case, Plaintiff does not allege that any of the tortious conduct took place in Ohio. Instead, Plaintiff asserts that "Defendants engaged in a plan and scheme to disparage and discredit Plaintiff, harming his reputation only after Plaintiff attempted to exercise his rights under Ohio law…to review corporate books and records." (Doc. 17 at 6). The actual alleged

6

scheming, however, was not alleged to have occurred in Ohio, but rather through interstate correspondence.  (Doc. 1, ¶ 39-41). Likewise, Plaintiff fails to allege that the Defendants acted within Ohio when they blocked his access to the online forum.  (*See* Doc. 1, ¶ 65).  Thus, § 2307.382(A)(3) does not apply.

Moreover, section (A)(4) of Ohio's long-arm statute "provides for personal jurisdiction over an alleged tortfeasor for causing tortious injury in Ohio by an act or omission outside of Ohio if the alleged tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Ohio."  *Dayton Superior Corp.*, 288 F.R.D. at 162-63.  Subsection (A)(4) requires: (1) a tortious injury to occur in Ohio; and (2) a defendant who conducted a regular course of business in Ohio.  *Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 629 (S.D. Ohio 2012) (citing *Weiskopf Industries Corp. v. Hidden Valley Towel, Inc.*, Case No. 67436, 1994 WL 716342 (Ohio App. Dec. 22, 1994)) (citations omitted).  Plaintiff fails to demonstrate either element.

It is unclear from Plaintiff's Complaint that a tortious injury actually occurred in Ohio. Plaintiff alleges that "Defendants' violation of their duties as officers and trustees by improperly blocking Plaintiff's access to his membership benefits are directly causing and will continue to cause damage to Plaintiff's ability to communicate with the primary market for his past, current, and future Porsche publications and other pursuits." (Doc. 1, ¶ 15).  Plaintiff is not an Ohio resident and the Complaint does not allege any consequences that will or have occurred in Ohio. In *International Paper*, the Court found that the plaintiff made a *prima facie* showing of personal jurisdiction under § 2307.382(A)(4) because his Complaint, in part, alleged that the defendant's out-of-state disclosure of confidential and trade secrets "caused injury in Ohio to [an] Ohio-

7

based [company]." 872 F. Supp. 2d at 631.  In the case *sub judice*, however, Plaintiff does not provide any reasons why or how the Defendants' actions have caused harm in Ohio.

Further, Plaintiff has not demonstrated that Defendants "regularly did business in Ohio and/or engaged in other persistent course of conduct in Ohio." *Id.*  Instead, Plaintiff merely alleges that the Defendants "proactively sought leadership and control positions with [an] Ohio corporation" and "campaigned for their office, soliciting votes from the corporation's members," including those in Ohio.  (Doc. 17 at 5).  Unlike in *International Paper*, where the plaintiff established that the defendant worked for an Ohio division of a company, and regularly communicated with and reported to personnel in Ohio, 872 F. Supp. 2d at 631, Plaintiff does not allege more than sporadic business activities in Ohio.  (*See* Doc. 29 at 2).  In Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff merely alleges one instance when Defendants were physically in Ohio for a business meeting, which falls short of demonstrating "a regular course of business."  (*Id.*).

Plaintiff has, therefore, failed to make a *prima facie* showing of personal jurisdiction under subsection (A)(3) and (4) of Ohio's long-arm statute.

### c. Due Process

Even assuming, arguendo, that Plaintiff made a *prima* facie showing of personal jurisdiction under Ohio's long-arm statute, his Complaint still fails to comport with the due process requirement.  In evaluating whether personal jurisdiction accords with due process, the Court must determine whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial justice.'"  *Bird*, 289 F.3d at 871-72 (quoting *Int'l Shoe*, 326 U.S. at 316).  Jurisdiction may be found to exist "either generally, in cases in which a defendant's 'continuous and systematic'

conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). Here, as there is no indication that Defendants had "continuous and systematic" contact with Ohio (*see supra*, Section III. A. 2. b.), the relevant inquiry is whether the constitutional requirements for specific jurisdiction are met in this case.

Specific jurisdiction "often may be premised on a single act of the defendant." *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). The Court must examine "[t]e nature and quality of the act, as well as the circumstances surrounding its commission…to determine whether personal jurisdiction exists in each case." *Id.* (citing *Int'l Shoe*, 326 U.S. at 318). The Sixth Circuit has devised a three-part test for determining the "outer limits of *in personam* jurisdiction based on a single act:"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993) (quoting *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)). All three prongs must be established for a court to exercise specific jurisdiction. *Intera Corp. v. Henderson*, 428 F.3d 605, 619 (6th Cir. 2005). As discussed below, Plaintiff is unable to satisfy each of the requirements.

### i. Purposeful Availment

Under the purposeful availment prong, "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Nationwide*, 91 F.3d at 795 (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989)) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (internal quotations omitted). Rather, the defendant must have purposefully availed himself of "the privilege of acting in the forum state or causing a consequence in the forum state." *Air Prods.*, 503 F.3d at 551 (quoting *Southern Mach.*, 401 F.2d at 381) (internal quotations omitted)).

In running for office and soliciting votes to obtain trustee positions in an Ohio corporation, Defendants have not purposefully availed themselves of the laws of Ohio. (*See Complaint*, Doc. 1, ¶6 and Doc. 17 at 5). Defendants have not created "ongoing, substantive contacts in the forum state," *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006), but instead have established attenuated contacts, at best. Defendants have not sought out business in Ohio, negotiated with or established continuing business relationships with Ohio residents. *See Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 540 (S.D. Ohio 2012) (finding the defendant corporation to have purposefully availed itself of the laws of the forum state because it "purposefully entered an ongoing relationship with the Plaintiff Ohio corporation in order to gain the benefit of [the plaintiff's] substantial investment capital [and]…that relationship contemplated future consequences."). Instead, Defendants merely sought out positions of an organization that is situated in Ohio. (Doc. 1, ¶ 1).

Further, Plaintiff only alleges one instance in which Defendants conducted a business meeting in Ohio (Doc. 29 at 2), falling far short of continuous and systematic contacts. *See Air Prods.*, 503 F.3d at 551-52 (holding that the defendant's hundreds of telephone, email and mail correspondence to the forum state for the purpose of conducting transactions demonstrated purposeful availment). At that single meeting, Defendants did not solicit business from Ohio residents, but merely held a routine business meeting. (See *Exhibit 2*, Doc. 29-2). Lastly, Defendants have not purposefully directed any activities toward Ohio. (*See supra*, Section III. A. 2. b.).

### ii. Arising from Activities in Forum State

To establish specific jurisdiction, the cause of action at issue must arise from the defendant's activities in the forum state. *Air Prods.*, 503 F.3d at 552. To meet this requirement, a plaintiff must establish at least a "causal connection" between a defendant's activities in the forum state and the harm to the plaintiff. *Neogen*, 282 F.3d at 892. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

Here, however, Plaintiff fails to allege even a causal connection between defendant's contacts with Ohio and any harm to Plaintiff. All of Plaintiff's claims arise out Defendants alleged conspiracy to defraud Plaintiff of his membership benefits (*Complaint*, Doc. 1, ¶¶ 40-42), which is not causally related to Defendant's sporadic and attenuated contacts with Ohio. Plaintiff is not an Ohio resident and does not allege that Defendants hatched the purported conspiracy in Ohio. Thus, Plaintiff fails to demonstrate any connection between Defendants' contacts with Ohio and the operative facts of the controversy.

### iii.     Reasonableness

Finally, a defendant's acts or the consequences thereof must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Southern Mach.*, 401 F.2d at 381.  When making the "reasonableness" inquiry, courts consider several factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *CompuServe*, 89 F.3d at 1268 (quoting *Am. Greetings*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).

Residents of various states across the nation and without substantial connection to Ohio, Defendants would certainly be burdened by defending a lawsuit in Ohio.  Without having assumed an obligation, as is the case when individuals engage in interstate business relations, *Opportunity Fund*, 912 F. Supp. 2d at 540, this burden is unreasonable.  Moreover, Ohio has no legitimate interest in the case, as neither the Plaintiff nor Defendants are Ohio residents and Defendants do not contract to do business in Ohio.  *See Bird*, 289 F.3d at 875 ("Ohio has a legitimate interest in protecting the business interest of its citizens.").

Lastly, while Plaintiff argues that "justice and fair play cannot be done if this Court does not exercise jurisdiction over Defendants" because "[i]f this Court does not accept jurisdiction, this Plaintiff realistically has nowhere else to go" (Doc. 17 at 5), this assertion is inaccurate. First, Plaintiff could bring suit against the individual defendants in jurisdictions in which they are residents or conduct business. Further, Plaintiff has a lawsuit pending in Franklin County (Case No. 12-CV-12434), providing him a forum for most of his complaints against the Registry. Thus, the Court finds Defendants' connections with Ohio insufficient to make personal

jurisdiction reasonable. Plaintiff's allegations therefore fail all three elements necessary to establish specific jurisdiction over Defendants.

### 3. Federal RICO Jurisdiction

In Plaintiff's *Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss* (Doc. 29), Plaintiff for the first time asserts that personal jurisdiction over federal RICO claims is based on nationwide contacts. (Doc. 29 at 3-4). Under this approach, Plaintiff argues that any Federal District Court has personal jurisdiction over the Defendants. (*Id.*).

Defendant argues that the Court should not consider this argument, as there is no valid reason for the delay and it is unrelated to supplemental discovery. (Doc. 32 at 2). Even if the Court considered the argument, personal jurisdiction under this theory fails.

Although RICO "authorizes nationwide service of process regardless of the defendants' contacts with the forum state," it only allows for such nationwide service "when it is shown that the ends of justice require it." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 802 (N.D. Ohio 1998) (quoting *LaSalle National Bank v. Arroyo Office Plaza, Ltd.*, No. 87-C-463, 1988 WL 23824 (N.D. Ill. Mar. 10, 1988). Plaintiff failed to demonstrate or even allege that justice requires nationwide jurisdiction. (*See supra*, Section III. A. 2. c). Instead, Plaintiff merely asserts that Defendants satisfy the nationwide contacts approach, without discussing it further. (Doc. 29 at 4).

Moreover, while the Sixth Circuit has yet to address whether RICO permits nationwide service of process, *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 617 F. Supp. 2d 700, 706 (S.D. Ohio 2009), most jurisdictions limit nationwide service to cases in which the court has personal jurisdiction over at least one of the defendants, relying on the traditional minimum contacts analysis. *See Kattula v. Jade*, No. 5:07-CV-52, 2007 WL 1695669, at * 3 (W.D. Ky.

13

June 8, 2007); *800537 Ontario Inc. v. Auto Enterprises, Inc.*, 113 F. Supp. 2d 1116, 1127 (E.D. Mich. 2000); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916 (5th Cir. 1987); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). As there is no personal jurisdiction over any one Defendant, nationwide service fails.

Plaintiff has failed to meet its burden and did not make the requisite *prima facie* showing that this Court's personal jurisdiction over Defendants is proper. Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is, therefore, **GRANTED.**

### B.     Failure to State a Claim

Alternatively, Defendants move to dismiss Plaintiff's action for "failure to state a claim on which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendants argue that Plaintiff's federal RICO claim is inadequately pled and fails as a matter of law. (Doc. 12 at 7-9). Consequently, Defendants ask the Court not to exercise supplemental jurisdiction over the state law claims. *Id.* Even if Defendants' Rule 12(b)(2) motion was denied, Defendants' motion to dismiss for failure to state a claim is **GRANTED.**

#### *1. Standard of Review*

Federal Rule of Civil Procedure 12(b)(6), which allows for a case to be dismissed for "failure to state a claim upon which relief can be granted," "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus,* 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.

*Ashcroft v. Iqbal,* 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell,* 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### 2. *Law and Analysis*

Plaintiff alleges five counts against Defendants. Defendants seek to have all counts dismissed. They are addressed in turn below.

#### i. Mail and Wire Fraud

In Count One, Plaintiff alleges mail and wire fraud pursuant to 18 U.S.C. §§ 1341 and 1343, arguing that "Defendants formed a scheme or artifice to defraud Plaintiff" and "used the United States mails, interstate communications, or wires or caused a use of the United States mails, interstate communications, or wire in furtherance of the scheme." (*Complaint*, Doc. 1, ¶¶ 82-84). Because both statutes are criminal statutes and do not create federal question jurisdiction for a private remedy, the Court dismisses Count One. *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178-79 (6th Cir. 1979); *see also Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 963

(S.D. Ohio 2010) (dismissing a plaintiff's wire and mail fraud claim against a defendant because violations of 18 U.S.C. §§ 1341 and 1343 "do not give rise to private causes of action.").

### ii.     Civil RICO Conspiracy

While unclear from Plaintiff's Complaint, in Count Two, Plaintiff alleges that Defendants violated the federal RICO statute, 18 U.S.C. §§ 1962-68, with wire and mail fraud (*see supra*, Section III. B. 2. i)  as the predicate offenses.  (Doc. 17 at 10).  Defendants argue that Plaintiff fails to allege the predicate offenses with the particularity required under Federal Rule of Civil Procedure 9(b).  (Doc. 12 at 8; Doc. 19 at 5).

A civil RICO claim has four elements: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). "Racketeering activity" is defined, in pertinent part, "as any act which is indictable under any of the following provisions of Title 18, United States Code … section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)…."  *Van Dorn Co., Central States Can Co. Div. v. Howington*, 623 F. Supp. 1548, 1553 (N.D. Ohio 1985).  "A 'pattern of racketeering activity' is defined by statute as requiring at least two acts of racketeering activity," as predicate offenses. *Id.* (citing 18 U.S.C. § 1961(5)).  Indeed, "'while two acts are necessary, they may not be sufficient.'"  *Shuttesworth v. Hous. Opportunities Made Equal*, 873 F. Supp. 1069, 1074 (S.D. Ohio 1994) (quoting *Sedima*, 473 U.S. at 496, n.14).

When alleging mail or wire fraud as the predicate offense of a RICO claim, pursuant to Fed. R. Civ. P. 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity."  *Id.* (quoting Fed. R. Civ. P 9(b)).  Thus, "allegations of fraud which are 'merely bare assertions of legal conclusions' will not satisfy the requirements of a RICO claim."  *Id.*

16

(quoting *Condor America, Inc. v. American Power Development, Inc.*, 128 F.R.D. 229, 232 (S.D. Ohio 1989).

Aside from Plaintiff's conclusory allegation that Defendants engaged in mail or wire fraud (Doc. 1, ¶¶ 82-84), Plaintiff failed to provide any further details regarding Defendants' alleged fraud.  In order to maintain a RICO claim, the complaint, at a minimum, must identify "the time, place, and contents of the alleged fraudulent statement."  *Pavuk v. U.S. Bank Nat. Ass'n ND*, No. 2:09-CV-00514, 2010 WL 3057407, at *4 (S.D. Ohio Aug. 2, 2010); *Shuttlesworth*, 873 F. Supp. at 1078.  Further, plaintiff must allege the "identity of the person making the misrepresentations."  *Condor*, 128 F.R.D. at 232 (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).  In *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988), the court found plaintiff's fraud complaint to satisfy Rule 9(b) because it "specifie[d] the parties and the participants to the alleged fraud, the representations made, the nature in which the statements [were] alleged to be misleading or false," along with "the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud."

While Plaintiff alleges two dates of alleged mail fraud (Doc. 1, ¶¶ 39, 43), he fails to specify the participants in the alleged fraud.  Plaintiff merely alleges that "Defendants sent and exchanged communications cross state lines…in which they schemed to invite Plaintiff…to an 'open member' meeting… with a private scheme among Defendants to use that meeting to attack and ridicule Plaintiff…and to terminate his membership status." (*Id.*, ¶ 40).  He fails to distinguish between the Defendants, thereby not specifically identifying the parties who made the purported misrepresentations.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003) (finding that the failure to identify specific parties fails the Rule 9(b) requirement of

17

specificity); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (upholding the dismissal of a complaint alleging fraud because "the amended complaint did not specify the names of any individuals involved in the [alleged fraud]."). Because a complaint may not rely on blanket allegations against all defendants because "each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged," *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981) (internal quotations and citations omitted), *aff'd*, 735 F.2d 1363 (6th Cir. 1984), Plaintiff's complaint, which collectively refers to Defendants, except Mr. Dunn (Doc. 1, ¶44), fails to allege the required specificity.

Further, Plaintiff fails to allege any injury from the alleged mail and wire fraud. He did not attend the meeting (*Id.*, ¶ 46), which Plaintiff alleges to be the purpose of the illegal scheme, and thus was not harmed by the alleged mail or wire fraud. Further, Plaintiff does not specifically allege the place of the alleged fraud, as he merely vaguely refers to communications sent throughout the United States. (*Id.*, ¶¶ 39-41).

Based on the above deficiencies, the Court finds that the allegations in Plaintiff's complaint have failed to comply with Rule 9(b) and Defendants' 12(b)(6) motion to dismiss for failure to state a claim is **GRANTED.**

### iii.    Declaratory Judgment

In Count Three, Plaintiff requests that the Court grant a declaratory judgment "that he remains and is an Active member of the Registry, and that Defendants have violated and failed to perform their duties in their official capacities with the Registry by blocking his membership privileges." (Doc. 1, ¶ 94).

Because 28 U.S.C. § 2201, which gives the Court authority to render declaratory judgments, does not create an independent basis for federal subject matter jurisdiction, *Heydon v. MediaOne of Southeast Michigan*, 327 F.3d 466, 470 (6th Cir. 2003), and Plaintiff's federal RICO claim fails to state a claim, the Court does not have jurisdiction over this matter.

### iv. State Law Claims

In Count Four, Plaintiff alleges that Defendants breached fiduciary duties owed to Plaintiff (Doc. 1, ¶¶ 99-106) and in Count Five, Plaintiff alleges that Defendants intentionally interfered with and caused a termination of Plaintiff's relationship with the Registry (*Id.*, ¶¶ 1-6).

Because the Court finds a failure of federal jurisdiction, it declines to exercise supplemental jurisdiction over the state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, the remaining state claims should also be dismissed. *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(2) and, alternatively, 12(b)(6).

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: July 21, 2014**